UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NORMAN WEBSTER VARNER, ) | |
| ) | |
| Movant, ) | |
| ) | Case No. 4:12 CV 2071 RWS |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

Petitioner Norman Webster Varner has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. Varner alleges (1) that he is actually innocent of the crime to which he pleaded guilty, (2) that he received ineffective assistance of counsel, and (3) that I erred by departing upward from the applicable sentencing guideline range. For the reasons set forth below, I will deny Varner's motion.

**I.      Background**

The following facts are established by Varner's plea agreement entered in the underlying criminal case:

> On September 26, 2010, Cynthia Varner called the police and reported that she found a videotape in her husband Norman Varner's toolbox in the garage on September 25, 2010. The videotape contained footage of her 15-year-old daughter, V, nude.
> Officers responded to the Varner home at 6290 Treeridge Trail in St. Louis County to investigate further. This address is located in the Eastern District of Missouri.
> Upon arriving at the residence, V told officers that on Friday evening, September 24, 2010, she was in her bedroom changing clothes when she found a Panasonic video camera on her shelf, resting on top of a small candle and covered with one of her t-shirts. The camera was pointing towards the open room area. She confronted her step-father, the [Petitioner], who denied knowing anything about it. He took the video camera from her and later told her that the camera did not even have a tape in it and not to worry about it.

1

> Cynthia Varner became suspicious of [Petitioner], so she searched the house and garage and found a Maxell Mini DV Digital Video Cassette in [Petitioner]'s toolbox located in the garage. This was the same size video cassette that is used in the Panasonic video camera V found in her room. Cynthia Varner viewed the video cassette using the Panasonic video recorder and saw her daughter fully nude in the video. Cynthia Varner then called the police.
>
> Norman Varner was not present at the house when police were there. He had been admitted earlier that evening to St. John's Hospital for a previously-scheduled back surgery. On October 5, 2010, [Petitioner] was discharged from the hospital. Officer's arrested [Petitioner] upon his release. Officers conveyed [Petitioner] to the St. Louis County Police Department to interview him. He admitted to putting the camera in V's room on Friday, September 24, 2010, while she was in the shower. He admitted to viewing the video cassette and thereafter putting the cassette in his tool box.

Case No. 4:10-cr-00667 RWS [Doc. # 34, p.3-4].

On December 16, 2010, a federal grand jury indicted Varner on two charges. In Count I, Varner was charged with attempted production of child pornography in violation of 18 U.S.C. § 2251(a). This charge carried a mandatory minimum term of imprisonment for 15 years. In Count II, Varner was charged with possession of child pornography in violation of 18 U.S.C. § 2252A (a)(5)(B). Count II carried no mandatory minimum sentence. Varner entered a plea of guilty to Count II in exchange for the United States Attorney dropping the more serious charge in Count I.

On November 4, 2011, I sentenced Varner to 72 months of imprisonment, which was above the guideline range of 30-37 months. Because I deviated from the guideline range, the appeal waiver contained in the plea agreement did not prevent Varner from appealing his case directly to the United States Court of Appeals for the Eighth Circuit. Varner, however, did not appeal to the Eighth Circuit, choosing instead to file this motion for post-conviction relief.

## II.     Discussion

### *A. Actual Innocence*

The parties entered into a plea agreement that contained an appeal waiver, but this waiver applied only if I sentenced Varner within the applicable sentencing guideline range. Because I sentenced Varner upward of this range, he had the opportunity to appeal directly to the Eighth Circuit Court of Appeals but failed to do so.

"Normally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." Poor Thunder v. United States, 810 F.2d 817, 823 (8th Cir. 1987). If a petitioner could have raised a claim on direct appeal but did not, he cannot raise the claim in a § 2255 motion unless he can show a cause for the procedural default and actual prejudice as a result of the alleged violation of law, or by demonstrating his actual innocence. Storey v. Roper, 603 F.3d 507, 523 (8th Cir. 2012). Here, Varner maintains that he is actually innocent of the crime.

The standard for actual innocence is high. Varner must show that in light of the evidence, "it is more likely than not that *no* reasonable juror would have found petitioner guilty beyond a reasonable doubt." Jennings v. United States, 696 F.3d 759, 764 (8th Cir. 2012) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)) (emphasis added). "'Actual innocence' means factual innocence, not mere legal insufficiency." Id. (citing Bousley v. United States, 523 U.S. 614, 623 (1998).

Varner contends that he did not possess child pornography within the meaning of 18 U.S.C. § 2252A (a)(5)(B). Varner argues that the victim, V, was facing away from the camera and her genitals were not visible. He further argues that more than "mere nudity" is required

before an image can qualify as "lascivious" under the statute. United States v. Kemmerling, 285 F.3d 644, 645-46 (8th Cir. 2002).

In determining "lasciviousness," the Eighth Circuit turns to the Dost factors. See United States v. Dost, 636 F.Supp. 828, 832 (S.D. Cal.1986). The Dost factors include:

(1) whether the focal point of the picture is on the minor's genitals or pubic area;

(2) whether the setting of the picture is sexually suggestive; (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age;

(4) whether the minor is fully or partially clothed or is nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; and

(6) whether the image is intended to elicit a sexual response in the viewer.

United States v. Johnson, 639 F.3d 433, 439-40 (8th Cir. 2011).

The six Dost factors are neither definitive nor exhaustive, Id. at 440, and "[a]ll six Dost factors need not be present in order to bring the depiction under the proscription of the statute." United States v. Wallenfang, 568 F.3d 649, 657 (8th Cir.2009) (quoting United States v. Wolf, 890 F.2d 241, 245 (10th Cir.1989)). "Even images of children acting innocently can be considered lascivious if they are intended to be sexual." U.S. v. Johnson, 639 F.d 433, 440 (8th Cir. 2011).

The facts show that Varner set up a camera in his stepdaughter's bedroom. The video camera was facing the center of the room. At the time Varner set up the camera, V was in the shower and thus likely to appear in the room nude shortly thereafter. Although V was facing away from the camera for the majority of the captured video, she turns around to face the camera near the end of the recording. Contrary to Varner's assertion, the camera captured full frontal nudity of the victim and her genitals are visible.

4

Varner now argues that he set up the camera in an attempt to catch V drinking alcohol and unintentionally recorded her nudity. However, when confronted by V, Varner took the camera from her and later told her that the camera did not even have a tape in it and not to worry about it. Varner did not immediately admit that he had inadvertently recorded V nude or erase the tape. Instead, he removed the tape from the camera and hid it in his toolbox in the garage, where his wife later discovered it. Based on Varner's behavior, a reasonable jury applying the Dost factors could find that Varner intended to secretly capture a lascivious display of V's genitals in order to elicit a sexual response.

Finally, Varner admitted that he possessed child pornography. He signed a plea agreement admitting that the video contained the "lascivious display of [V]'s genitals." Case No. 4:10-cr-00667 RWS [Doc. # 34, p. 3]. At the change of plea hearing, the Assistant U.S. Attorney recited the relevant facts and I held the following colloquy with Varner:

>THE COURT: Mr. Varner, is what the Assistant U.S. Attorney said true?
>
>DEFENDANT: Yes.
>
>THE COURT: You did what she says you did?
>
>DEFENDANT: Yes.

Case No. 4:10-cr-00667 RWS [Doc. # 63, p. 17].

Varner's sworn statements before the Court "carry a strong degree of verity and pose a formidable barrier in any subsequent collateral proceedings." Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997). Based on the overwhelming evidence, it cannot be said that "it is more likely than not that *no* reasonable juror would have found [Varner] guilty beyond a reasonable doubt." Jennings v. United States, 696 F.3d 759, 765 (8th Cir. 2012) (emphasis added).

5

*B. Ineffective Assistance of Counsel*

Varner further asserts that he received ineffective assistance of counsel from his attorney. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To succeed on a claim of ineffective assistance of counsel, Varner must show that: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that this deficient representation "prejudiced the defense." Id. at 687.

When evaluating counsel's performance under the first prong, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Varner must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. And, to "eliminate the distorting effects of hindsight," courts examine counsel's performance from counsel's perspective at the time of the alleged error. Id. at 689. To prove the second prong, Varner must show that there is a reasonable probability that, but for counsel's ineffectiveness, the result of the proceeding would have been different. Id. at 694. Here, Varner must show that he would have not pleaded guilty and would have instead insisted on going to trial if his counsel's assistance was not ineffective. See Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Varner first argues that his counsel was "deficient at the plea, conviction, and sentencing" stages of his criminal case. [Doc. #1, p. 13]. However, contrary to Varner's argument, the record shows that counsel fully understood the issues in this case. Defense counsel negotiated a plea agreement whereby the United States Attorney dropped the more serious charge of attempted production of child pornography, a charge that could have led to a sentence of more than double the sentence Varner eventually received. Given the evidence against Varner, this

6

was a reasonable plea agreement. While Varner contends that his attorney was deficient for "accepting" my issuance of a sentence upwards of the guideline range, the record shows that counsel objected to the sentence as soon as it was handed down. Case No. 4:10-cr-00667 RWS [Doc. # 64, p. 19]. Varner's counsel cannot be held responsible for my decision to depart from the advisory guidelines.

At the change of plea hearing, Varner and I held following exchange while he was under oath:

> THE COURT: Have you had enough time to discuss your case with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you satisfied with his representation of you in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is there anything you think your attorney should have done but did not do in representing you?
>
> THE DEFENDANT: No.

Case No. 4:10-cr-00667 RWS [Doc. # 63, p. 6-7].

Varner had a second opportunity to register his displeasure with his counsel months later at his sentencing:

> THE COURT: Mr. Varner, sir, have you had the opportunity to say everything you wanted to say?
>
> THE DEFENDANT: Yes, sir, I have.
>
> THE COURT: Has your attorney spoken fully on your behalf?
>
> THE DEFENDANT: Yes, sir.

Case No. 4:10-cr-00667 RWS [Doc. # 64, p. 9-10].

7

Varner's sworn affirmations of his counsel's performance "carry a strong degree of verity and pose a formidable barrier in any subsequent collateral proceedings." Nguyen v. United States, 114 F.3d 699, 703 (8th Cir.1997). Conversely, there is no evidence that Varner's counsel fell below an objective standard of reasonableness. Assuming Varner was able to show that his counsel was unreasonable, he has failed to show that, but for counsel's errors, he would have not pleaded guilty and would have instead insisted on going to trial. Accordingly, Varner's claim of ineffective assistance of counsel during the criminal proceedings lacks merit.

Varner also asserts that his attorney was ineffective for "not contacting or even asking if the Movant wished to appeal." [Doc. #1, p. 13]. In Roe v. Flores–Ortega, the Supreme Court explained how the Strickland test applies in the context of counsel's failure to file an appeal "when the defendant has not clearly conveyed his wishes [regarding an appeal] one way or the other." 528 U.S. 470, 477 (2000). The Court must first determine whether counsel consulted with the defendant about an appeal and, if not, whether the failure to consult was unreasonable. See Id. at 478. "[C]ounsel has a constitutionally imposed duty to consult ... when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. Finally, a defendant satisfies the second Strickland prong by showing that "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484.

Here, Varner claims that his counsel failed to consult with him about an appeal. This is contrary to the record. On November 15, 2011, counsel signed a Certification of Compliance with Local Rule 12.07(A), which affirmed that he explained to Varner his right to appeal and that

8

Varner did not request counsel to file a notice of appeal. Case No. 4:10-cr-00667 RWS [Doc. # 58]. This certification also indicates that Varner declined to sign a notice under Local Rule 12.07(A)(2).

Even if I assume that counsel failed to consult with Varner about his right to appeal, and that the failure to consult was unreasonable, I find that Varner has not shown prejudice. At Varner's sentencing hearing, I informed him of his appellate rights:

> THE COURT: That does raise the issue, Mr. Varner, that if you want to appeal, you need to do so within 14 days. Obviously, a sentence will be imposed as stated for the reasons set forth on the record. If you want to appeal, you need to do so within 14 days. Your attorney will file the notice of appeal if you ask him to do so. If for some reason you can't get that done, you can ask the clerk of the court, and she'll file it. If you cannot afford the filing fee, it is possible, upon a proper motion, the fee would be waived.

Case No. 4:10-cr-00667 RWS [Doc. # 64, p. 19]. In his Reply, Varner concedes that he "knew he had the right to appeal," but insists that he was without the "knowledge or ability" to initiate his own appeal. [Doc. #18, p. 8]. Whether Varner had the knowledge or ability to initiate his own appeal is of no consequence. Varner knew he only had to ask his counsel or the clerk of the court to file a notice of appeal on his behalf, but he failed to do so. Given that Varner appreciated his appellate rights but, for whatever reason, did not express an interest in appealing or instruct his counsel to file a notice of appeal, I cannot find there is "a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484.

*B. Upward Departure*

Varner further asserts that he suffered a violation of his Due Process rights when I sentenced him to 72 months of imprisonment, which was above of the applicable guideline range of 30-37 months. The parties entered into a plea agreement that contained an appeal waiver, but this waiver applied only if I sentenced Varner within the applicable sentencing guideline range.

9

Because I sentenced Varner upward of this range, he had the opportunity to file a direct appeal challenging the upward departure, but he failed to do so. Varner cannot now raise this upward departure claim in a § 2255 motion unless he can show a cause for the procedural default and actual prejudice as a result of the alleged violation of law, or by demonstrating his actual innocence. Storey v. Roper, 603 F.3d 507, 523 (8th Cir. 2012).

Varner is unable to demonstrate his actual innocence. Varner asserts that his ineffective assistance of counsel claim is sufficient to show the cause and prejudice necessary to overcome the procedural bar. However, as detailed above, Varner's ineffective assistance of counsel claim is without merit. Because Varner has not shown cause for the procedural default and actual prejudice as a result of the alleged violation of law, I may not entertain his upward departure claim. Id.[1]

### III. Request for Evidentiary Hearing

A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless the motion, rules, and record conclusively show that the petitioner is not entitled to relief. Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir.2008). Because the record conclusively establishes that Varner is not entitled to relief, I need not hold an evidentiary hearing.

### IV. Certificate of Appealability

To grant a certificate of appealability, a court must find a substantial showing of a denial of a constitutional right. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir.1997) (holding that a substantial showing requires that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Because Varner has not made such a showing, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that Norman Webster Varner's motion under 28 U.S.C. § 2255 is **DENIED**.

**IT IS FURTHER ORDERED** that Varner's motion for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that this court will not issue a certificate of appealability, as Varner has not made a substantial showing of the denial of a federal constitutional right.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2014.

---

[1] I recognize the frustration that Varner may feel as a result of the apparent circularity of my decision. I have explained that Varner should have raised the upward departure issue on direct appeal, but Varner complains that his counsel failed to consult with him about an appeal. However, the result is not as circular as it may appear; Varner knew he had the right to appeal, but he did not express an interest in appealing or instruct his attorney to file an appeal.